IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE LOCKETT,                              )
                                             )
        Plaintiff,                           )
                                             )
v.                                           )        CASE NO. 2:04-cv-1214-F
                                             ) (WO- Not Recommended for Publication)
CITY OF MONTGOMERY, *et al.*,                )
                                             )
        Defendants.                          )

## MEMORANDUM OPINION AND ORDER

In this lawsuit, George Lockett ("Lockett") alleges that his employer, the City of

Montgomery, Alabama ("the City of Montgomery") discriminated against him on the basis

of his race.   In particular, Lockett complains that he was denied several promotions.

Pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII"), Lockett seeks redress.[1]  This cause is

presently before the Court on the Motion for Summary Judgment (Doc. # 15) filed by the

City of Montgomery on November 30, 2004.   The Court has carefully considered the

undisputed evidence filed with the motion, the materials and argument submitted in support

of and in opposition to the motion, and the applicable law.   For the reasons set forth below,

the Court finds that the motion for summary judgment is due to be GRANTED.

### I. JURISDICTION AND VENUE

Jurisdiction over this matter is properly asserted pursuant to 28 U.S.C. §1331.   The

parties do not contest personal jurisdiction or venue and the Court finds adequate allegations

---

[1]  Lockett makes no claim pursuant to any other statutes such as 42 U.S.C. § 1981.

of both.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party

to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.   To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, a party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir. 1990).   On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.   After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## III.  FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.   The submissions of the parties, viewed in the light most favorable to Lockett, the non-moving party, establish the following material facts:

Lockett began his employment with the City of Montgomery in November of 1988. Since being hired, Lockett has received one upgrade and three promotions.   In December of

1994, he received a promotion.  He currently holds the position of Construction Equipment Operator II.[2]

In this suit, Lockett complains that he was discriminated against on account of his race with respect to the promotion of Wayne Gwathney to Engineering Technician II on October 3, 1997 and the promotion of Wayne Mooney to Engineering Technician on October 1, 1999. These promotions were made under the administration of a Mayor who is no longer in office. Lockett's final complaint of race discrimination arises out of his failed application for promotion to the position of Assistant Solid Waste Superintendent.  Lockett described only this last claim of discrimination in his Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC").[3]

After the City of Montgomery promoted when Noah Johnson ("Johnson"), an African-American male, from Assistant Solid Waste Superintendent to Solid Waste Superintendent, the Assistant Solid Waste Superintendent position became vacant.  According to Lockett and

---

[2]   Construction Equipment Operator II is the third highest ranking position at the Montgomery Landfill.  During absences of the Solid Waste Superintendent or the Assistant Solid Waste Superintendent, a person employed in the Construction Equipment Operator II classification can be assigned the supervisory duties of either the Solid Waste Superintendent or the Assistant Solid Waste Superintendent.

[3]   On January 30, 2004, Lockett completed a Charge of Discrimination form and submitted it to the EEOC.  The EEOC received that Charge of Discrimination form on February 5, 2004.  In the Charge of Discrimination, Lockett alleged that Montgomery discriminated against him on the basis of his race by hiring a less qualified applicant for the Assistant Solid Waste Superintendent position for which Lockett had applied.  Lockett also complained that he had acted as Assistant Solid Waste Superintendent for sixteen months prior to the position being filled and had not been fairly compensated for performing those duties.

4

his mother,[4] Johnson designated[5] Lockett as Acting Assistant Solid Waste Superintendent. For purposes of this motion, the Court accept those statements as true.  Indeed, Lockett has presented evidence that for more than a year he attended meetings as Acting Assistant Solid Waste Superintendent and performed other functions and duties of the Assistant Solid Waste Superintendent position.  During this period, Lockett occupied an office which Johnson had used when he was Assistant Solid Waste Superintendent.

On March 19, 2003, the City/County Personnel Board for the City of Montgomery[6] received a request to fill the position of Assistant Solid Waste Superintendent.  On August 19, 2003, the position was opened for applications.  Lockett and other applied.  Lockett and five other applicants were determined to be qualified for the position and placed on a promotional register.  Lockett ranked number one on the promotional register.[7]  David

---

[4]  Lockett's mother is also employed at the Montgomery Landfill.

[5]  It is undisputed that Johnson did not have the power to formally designate Lockett as Acting Assistant Solid Waste Superintendent without the approval of Willie Peak.

[6]  The Montgomery City/County Personnel Board ("the Personnel Board") is a separate entity from the City of Montgomery.  It serves as the personnel department for the City of Montgomery, the County of Montgomery, the Montgomery Airport Authority, and the Montgomery Housing Authority.  The Personnel Board is response for recruiting applicants for employment for the aforementioned entities and for assessing the qualifications of those applicants.  Appointing authorities, such as the Mayor of the City of Montgomery, select employees from a register of qualified applicants, except for the upgrade of service maintenance workers who are selected through procedures established by a Consent Decree.

[7]  Under the applicable statute governing hiring by the Personnel Board, it prepares a list of five qualified candidates from which the appointing authority may select.  This list is called the promotional register.  In this case, there were five candidates for the appointing authority to consider.  The appointing authority has discretion in selecting from the qualified

Hatcher ("Hatcher"), another  Construction Equipment Operator II, ranked number four on the promotional register.

Johnson, Willie Peak ("Peak")[8] and Bill Manasco ("Manasco")[9] interviewed the five qualified applicants on the promotional register, including Lockett and Hatcher.  As a result of the interviews, the panel focused on Lockett, Hatcher, and another applicant.  Ultimately, they recommended that Hatcher be awarded the promotion because of his past experience in the maintenance and repair of heavy equipment which he obtained from previous employment.   Johnson,[10] Peak, and Manasco have all stated under oath that they recommended that Hatcher be awarded the promotion because they deemed him better qualified.  There is no direct evidence that the race of any applicant was a factor in the selection process.  Hatcher was promoted to Assistant Solid Waste Superintendent on October 10, 2003.

After requesting and receiving a Notice of Right to Sue from the EEOC, Lockett filed

candidates on the list.  While the appointing authority must hire from the promotional register, he need not fill the vacancy with the highest ranking person on the list.

[8] Peak had served as Acting Solid Waste Superintendent from June to December of 2002.

[9] Manasco has served as City Engineer since 1997.  Due to the illness of James H. Sigler, Manasco supervised the operations of the City of Montgomery Landfill in the fall and summer of 2003.

[10] Lockett and his mother both submitted affidavits to this Court in which they stated that they heard Johnson state that he was not involved in the selection of Hatcher for Assistant Solid Waste Superintendent and that the decision was made by Peak and Manasco.

this lawsuit.  In his Complaint he alleges that he was discriminated against on the basis of race with respect to several promotions.  He brings suit pursuant to Title VII for declaratory relief, injunctive relief, damages, attorney's fees, costs, and interest.

## IV.  DISCUSSION

### A.  Claims Relating to Promotion Decisions Made Prior to September 12, 2003

Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites that a plaintiff must satisfy before filing a private civil action under Title VII.  *See National R.R. Passenger Corp. v. Morgan,* 122 S. Ct. 2061, 2070 (2002).  According to this provision, "[a] charge...shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C.§ 2000e-(5)(e)(1).  *Accord, Pijnenburg v. West Ga. Health Sys., Inc.,* 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied,* 273 F.3d 1117 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred.").  This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past."  *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256-57 (1980).

The United States Supreme Court has explained that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980).  By choosing this relatively short

deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.* Indeed, this procedural rule, is not a mere technicality, but an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1994). Thus, if a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies. *See, e.g., Brewer v. Alabama,* 111 F. Supp. 2d 1197, 1204 (M.D. Ala. 2000).

Of course, the determination of whether a plaintiff has filed a timely EEOC depends on when the alleged unlawful employment practice "occurred." The United States Supreme Court has provided further clarification of the nature of this inquiry and set forth different standards for claims involving "discrete acts" and "hostile environment" allegations. *See generally*, *Morgan,* 122 S. Ct. 2061.

In cases involving discrete discriminatory acts, such as termination of employment, *failure to promote*, denial of transfer, or refusal to hire, a discrete discriminatory act occurs on the day that it happens. *Morgan,* 122 S. Ct. at 2070, 2073. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 2073. Consequently, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072. Each such act starts a new clock for filing

charges. *Id.* Consequently, Lockett can only litigate his claims arising out of an allegedly discriminatory failure to promote him if he made a proper complaint to the EEOC within 180 days of each promotional decision he seeks to challenge. *See, e.g., Morgan,* 122 S. Ct. at 2070, 2073.

In the present case, the EEOC received Lockett's Charge of Discrimination on February 5, 2004. Therefore, the Charge of Discrimination is timely and the administrative prerequisite to suit pursuant to Title VII is satisfied only if the unlawful employment actions of which he complains "occurred" on or after September 12, 2003. *See, Morgan,* 122 S. Ct. at 2070 (holding that a party must file an EEOC charge within 180 days from the date the unlawful act occurred or lose the ability to recover for it).

Lockett cannot pursue his claims of discrimination arising out of the failure to promote him to any position prior to September 12, 2003, because as to those claims his Charge of Discrimination was untimely. Additionally, Lockett's claims relating to denials of promotion other than the 2003 denial of promotion to Assistant Solid Waste Superintendent are not mentioned in Lockett's EEOC Charge of Discrimination. Lockett cannot be said to have timely exhausted his administrative remedies with respect to the promotions prior to September of 2003. Therefore, this Court may not entertain those claims, pursuant to Title VII. For this reason, the City of Montgomery's Motion for Summary Judgment is due to be GRANTED with respect to all claims relating to promotional completed prior to September 12, 2003, including his claims relating to the promotion of

9

Kenneth Gwatheny and Wayne Mooney.

## B.  Claim Relating to Promotion of Hatcher to Assistant Solid Waste Superintendent

Title VII makes it an "unlawful employment practice" for an employer to fail or refuse to promote any individual because of his race.  *See, e.g.,* 42 U.S.C. § 2000e-2(a); *Sledge v. Goodyear Dunlop Tires N. Am. Ltd,* 275 F.3d 1014, 1018 (11th Cir. 2001) (race); *Gaddis v. Russell Corp.,* 242 F. Supp. 2d 1123, 1134-35 (M.D. Ala.)*, aff'd without opinion,* 88 Fed. App. 385 (11th Cir. 2003) (race).

Because Lockett relies upon circumstantial evidence, rather than direct or statistical evidence, his discrimination claims are properly analyzed using the burden shifting paradigm developed in *McDonnell Douglas v. Green* and its progeny.  *See, e.g., McDonnell Douglas v. Green,* 411 U.S. 792 (1973).  Under this approach, the plaintiff has the burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence.  *Id.* at 802.  This *prima facie* case requires "evidence adequate to create an inference that an employment decision was based on a[n] illegal discriminatory criterion."  *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 (1977).  The plaintiff's establishment of a  *prima facie* case raises a presumption of illegal discrimination.  *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to rebut the presumption by articulating a  legitimate, nondiscriminatory reason for its

employment action.  *Holifield v. Reno,* 115 F.3d 1555, 1564-65 (11th Cir. 1997).  "This

intermediate burden is 'exceedingly light.'"  *Id.*  (quoting *Turnes v. AmSouth Bank, N.A.,* 36

F.3d 1057, 1061 (11th Cir. 1994).  The defendant has only a burden of production, not a

burden of persuasion, and does not have to persuade a court that it was actually motivated

by the reason advanced.  *McDonnell Douglas,* 411 U.S. at 802; *Burdine,* 450 U.S. 253-55.

Once the defendant satisfies this burden of production,

> the presumption of discrimination is eliminated and the plaintiff
> has the opportunity to come forward with evidence, including
> the previously produced evidence establishing the *prima facie*
> case, sufficient to permit a reasonable factfinder to conclude that
> the reasons given by the employer were not the real reasons for
> the adverse employment decision.

*Chapman,* 229 F.3d at 1024 (internal citations and quotations omitted).  The establishment

of the *prima facie* case does not, in itself, entitle the plaintiff to defeat a defendant's motion

for summary judgment.  After the defendant proffers a legitimate reason for its actions, "[i]n

order to avoid summary judgment, a plaintiff must produce sufficient evidence for a

reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory

reasons is pretextual."  *Chapman,* 229 F.3d at 1037.

To establish a *prima facie* case in a failure to promote claim, the plaintiff must prove

the following four elements:

> 1) that [he] belongs to a protected class; 2) that [he] was
> qualified for a job for which the employer was seeking
> applicants; 3) that despite [his] qualifications, [he] was rejected;
> and 4) that, after [his] rejection, the employer continued to seek
> applicants or filled the position with a person outside of

plaintiff's protected class.

*Gaddis v. Russell Corp.,* 242 F. Supp. 2d at 1135. *Accord, Walker v. Mortham,* 158 F.3d 1177, 1186 (11th Cir. 1998), *cert. denied,* 528 U.S. 809 (1999). For purposes of their motion, the City of Montgomery has assumed *arguendo* that Lockett can establish a *prima facie* case of race discrimination with respect to the promotion of Hatcher to Assistant Solid Waste Superintendent. The Court will do the same.

Although Lockett can arguably establish a *prima facie* case of race discrimination with respect to the October 2003 promotion of Hatcher, the City of Montgomery has met its burden of production by articulating a legitimate, non-discriminatory reason for its decision to promote Hatcher, rather than Lockett. The City of Montgomery contends that Lockett was not promoted and Hatcher was promoted because Hatcher was a better candidate for the position.

Because the City of Montgomery has met its burden by producing admissible evidence articulating legitimate, non-discriminatory reasons for the promotion of Hatcher, the burden shifts back to Lockett to establish that those reasons are pretextual. Lockett may establish pretext by undermining the credibility of the City of Montgomery's proffered explanations. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998). Instead of relying on conclusory allegations of discrimination or unsupported speculation about improper motives, Lockett must adduce evidence demonstrating "such weaknesses, implausibilities, incoherencies, or contradictions in the

12

employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." *Id.*

It is obvious from Lockett's testimony that he believes that the decision to promote Hatcher to Assistant Solid Waste Superintendent instead of promoting him to that position struck Lockett as unfair because he had performed many of the job duties of the position while informally and unofficially designated as Acting Assistant Solid Waste Superintendent. The "fairness" of such a decision is not before this Court. The issue is whether the decision constituted illegal discrimination on the basis of Lockett's race. Indeed, federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead [the] sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999), *cert. denied,* 529 U.S. 1109 (2000). *Accord, Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining that in analyzing discrimination claims, federal courts must be careful not to let plaintiffs "simply litigate whether they are, in fact, good employees" and must focus on whether the proffered reason for employment decision at issue was an honest one, rather than whether it was a correct one).

To the extent that Lockett appears to contend that he was more qualified than Hatcher by virtue of his experience or ranking on the promotional register, the Eleventh Circuit Court of Appeals has indicated that the issue in discrimination cases is not whether one employee is better qualified than another because federal courts do not sit in judgment of an employer's

decision.  *See Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *cert. denied* 126 S. Ct. 478 (2005).  As a result, " a plaintiff cannot prove pretext by simply showing that he was better qualified than the individual who received the position that he wanted."  *See Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir .2000), *cert. denied,* 532 U.S. 958 (2001). Pretext can be established through comparing qualifications only when "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face."  *Cooper,* 390 F.3d at 732 (citation and internal quotation omitted).  However, an employee's showing that the employer hired a less qualified candidate is probative of whether the employer's reason is pretextual, but not proof of pretext. *Lee,* 226 F.3d at 1253.  The Court cannot find on the record before it that any disparity between the qualifications of Hatcher and Lockett for the Assistant Solid Waste Superintendent position is so apparent as to virtually jump off the page and slap you in the face.

Lockett makes a variety of other arguments concerning the evidence before this Court which he contends establishes that there is a jury question as to whether the proffered reasons for the promotion of Hatcher rather than him were pretextual.  For example, Lockett contends that Hatcher's disciplinary history should have prevented him from receiving the promotion, but the evidence simply does not support this contention.  The Court is not persuaded that any of these arguments create a triable issue on the question of pretext.

Consequently, the record as a whole, even when viewed in the light most favorable to Lockett, compels the conclusion that Lockett has failed to create a genuine issue of

14

material fact with respect to whether the legitimate, non-discriminatory reasons proffered for the decision to promote Hatcher to Assistant Solid Waste Superintendent was a pretext for race discrimination. Under the applicable legal standards, the City of Montgomery is entitled to judgment as a matter of law on Lockett's claim that he was denied promotion to Assistant Solid Waste Superintendent in October of 2003 on account of his race.  Consequently, the City of Montgomery's motion for summary judgment is due to be GRANTED as to that claim.

## V.  CONCLUSION

For the reasons stated above, the Court finds that the City of Montgomery is entitled to summary judgment on all of Lockett's claims.  Accordingly, it is hereby ORDERED as follows:

(1)  The Motion for Summary Judgment (Doc. # 15) is GRANTED.

(2)  The pretrial and the trial scheduled in this matter are CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this the 17th day of February, 2006.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE